**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ALEXIA G.,[1] <br><br> *Plaintiff,* <br><br> v. <br><br> FRANK BISIGNANO, <br> Commissioner of Social Security[2] <br><br> *Defendant.* | No. 25-cv-2733 |

**<u>MEMORANDUM OPINION</u>**

Plaintiff  seeks Supplemental Security Income ("SSI") benefits under the Social Security Act ("the Act").  ECF No. 5 ( "AR") at 13.[3]  Plaintiff became disabled on September 27, 2011, but the Social Security Administration ("SSA" or "Commissioner") determined her disability ended on July 21, 2022.  *Id.*  Plaintiff disagreed and sought an administrative hearing to determine whether she is still disabled.  *Id.*  The SSA ultimately entered a final decision denying Plaintiff's continuing disability claim on July 23, 2025.  *Id.* at 1.  Plaintiff now seeks reversal or, alternatively, remand for reconsideration under 42 U.S.C. § 405(g).

---

[1]     The Court has partially redacted Plaintiff's name in accordance with the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.  *See* Memorandum from Hon. Wm. Terrell Hodges, Chair, Comm. on Ct. Admin. & Case Mgmt. to Chief Judges of the U.S. Cts. of Appeals, Chief Judges of the U.S. Cts., Clerks of the U.S. Cts. of Appeals, and Clerks of the U.S. Dist. Cts. (May 1, 2018), *available at* https://www.uscourts.gov/sites/default/files/18-ap-c-suggestion_cacm_0.pdf (last visited July 27, 2026).

[2]     The original Defendant has been substituted for his successor.  Fed. R. Civ. P. 25(d).

[3]     Any citation to the administrative record are to the sequential page numbers in the bottom right corner of ECF Nos. 5 through 5-10.  All other ECF citations are to the page numbers in the ECF headers.

Plaintiff argues that the Administrative Law Judge ("ALJ") (1) erroneously assessed her Residual Functional Capacity ("RFC") and (2) inadequately evaluated Plaintiff's subjective complaints. ECF No. 10 at 6–25. The Commissioner contests each argument and seeks affirmance. ECF No. 13. The Court **GRANTS** Plaintiff's Motion for Judgment of Reversal (ECF No. 10) and **DENIES** the Commissioner's Motion for Judgment of Affirmance (ECF No. 13).

## BACKGROUND

### I.    Statutory and Regulatory Framework

To be eligible for SSI benefits under the Act, the SSA must find a claimant disabled. 42 U.S.C. § 1382c(a)(3)(B). The Act defines disability as the "inability to engage in any substantial gainful activity" because of a physical or mental impairment which will foreseeably end in death or last for at least 12 consecutive months. 42 U.S.C. § 1382c(a)(3)(A). The SSA may find a claimant no longer eligible for such benefits if his or her "physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling[.]" 42 U.S.C. § 1382c(a)(4). For that reason, the SSA periodically reviews a claimant's entitlement to these benefits. 20 C.F.R § 416.994(a).

To determine if a recipient of SSI benefits continues to be disabled, an ALJ follows a seven-step sequential evaluation process: (1) whether claimant has an impairment or combination of impairments which meets or medically equals the criteria of an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"); (2) if not, whether medical improvement has occurred; (3) if so, whether medical improvement is related to the ability to work; (4) whether an exception to medical improvement applies; (5) whether claimant's current impairments or a combination thereof are severe; (6) whether, given claimant's RFC, she can perform her past relevant work; and (7) whether the claimant can perform other work in the national economy given her RCF, age,

2

education, and past work experience. *See* 20 C.F.R. § 416.994(b)(5); *Yamise R. v. Kijakazi*, No. 1:21-cv-3059, 2023 WL 7074088, at *1–2 (D.D.C. Oct. 25, 2023) (setting forth the sequential analysis for SSDI claims).

## II.    Plaintiff's Disability Claims and Procedural Posture

Plaintiff was born on December 18, 1990. AR at 51. She was 20 years old on her alleged disability onset date, September 27, 2011. *Id.* She previously applied for SSI benefits on September 27, 2011, alleging she became disabled on October 1, 2001. *Id.* at 142. Following an administrative hearing, the SSA approved Plaintiff's claim on March 13, 2014, and found her disabled. *Id.* at 14–15. That approval serves as Plaintiff's most recent favorable medical determination, or the comparison point decision ("CPD"). *Id.* After the SSA initially found Plaintiff disabled, the agency conducted two continuing disability reviews. During the first review, the SSA continued Plaintiff's disability. *Id.* at 135. During the second review, the SSA determined Plaintiff's disability ceased on October 23, 2021, because there was "insufficient evidence in [Plaintiff's] file to assess [the] current severity of any of [Plaintiff's alleged] conditions." *Id.* at 96, 98, 135. Although Plaintiff sought reconsideration, the disability hearing examiner upheld the SSA's January 31, 2022, cessation determination. *Id.* at 164–69. The examiner did, however, adjust the disability cessation date to July 21, 2022. *Id.* at 169. Plaintiff thereafter requested a hearing with an ALJ. *Id.* at 13. Following a hearing, at which Plaintiff appeared without counsel, the ALJ affirmed the examiner's determination that Plaintiff's disability had ceased. *Id.* at 25. On July 23, 2025, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision final. ECF No. 10 at 2. Plaintiff filed this suit on August 19, 2025. ECF No. 1-1 at 2.

### III.    The ALJ's Decision

#### A.    Plaintiff's CPD and Medically Determinable Impairments

Before conducting the seven-step test, the ALJ identified Plaintiff's CPD, her medically determinable impairments at the time of that CPD, and her current medically determinable impairments. AR at 14–18. First, at the time of the CPD, the SSA determined that Plaintiff had six medically determinable impairments, including "congenital deformity of the right knee; scoliosis; hypothyroidism; obesity; borderline intellectual functioning; and bipolar disorder." *Id.* at 15. These impairments rendered Plaintiff "unable to perform the mental demands of even unskilled work on a regular and continuing basis . . . She was not able to interact appropriately with coworkers, supervisors, or the public. She could not maintain concentration, persistence, and pace for even two hours at a time." *Id*. Indeed, the "latter restriction precluded her from completing a normal 8 hour work day and 5 day work week on a regular and continuing basis." *Id*. Following the January 11, 2024, hearing, the ALJ concluded that Plaintiff only had the following medically determinable impairments: "depressive disorder; post-traumatic stress disorder; mood disorder; cannabis use disorder; obesity; left ankle tendinitis with Os trigonum syndrome; status-post left ankle surgery." *Id.* Based on these impairments, the ALJ undertook the seven-step analysis.

#### B.    Steps One and Two: The Listings and Medical Improvement

At step one, the ALJ concluded that none of Plaintiff's current physical or mental impairments or combination thereof met or equaled any of the Listings. AR at 16. Notably, in evaluating the "four areas of mental functioning" to determine whether Plaintiff's mental limitations met any of the Listings, the ALJ concluded that Plaintiff had moderate limitations in all four areas. *Id.* at 16–17. Specifically, the ALJ found that Plaintiff had a moderate limitation

4

in concentrating, persisting, and maintaining pace ("CPP") based on her December 2022, May 2022, March 2023, and December 2023 medical examinations. *Id*.

At step two, the ALJ found that medical improvement had occurred because "there had been a decrease in medical severity of the impairments present at the time of the CPD." *Id*. at 18 (citing 20 C.F.R. § 416.994(b)(1)(i)).  In reaching this conclusion, the ALJ relied on the improvement in Plaintiff's subjective "self-care" abilities and other improvements between her May 2018 and May 2022 examinations. *Id*.  In her May 2018 examination, Plaintiff reported being in mental health treatment and receiving medication. *Id*. at 19.  The examiner noted that she "appeared markedly tense and anxious, her motor behavior was sluggish, and she did not consistently maintain eye contact, her thought processes were focused on traumatic events that occurred the prior year when she was in North Carolina, and her attention, concentration, and memory were impaired . . . ." *Id*.  Based on these observations, that examiner "assessed marked limitations in [Plaintiff's] ability to interact with others, sustain concentration and perform tasks at a consistent pace, and in her ability to regulate her emotions" and found Plaintiff had no medical improvement. *Id*.

The ALJ compared this May 2018 examination to Plaintiff's May 2022 examination, in which Plaintiff reported that she was "not [] involved in any mental health treatment." *Id*.  Indeed, although Plaintiff reported ongoing "depressive symptoms, including not want[ing] to be bothered, not wanting to sleep, and shutting down," she also reported "showering and bathing every day, that she cooks, cleans, does laundry, and shops, takes public transportation, goes out to eat and to get her nails done with her best friend, enjoyed cooking with her boyfriend, and that she manages her money." *Id*. at 19 (citing AR at 671, 673).  Further, unlike her May 2018 examination, at the time of the 2022 examination, Plaintiff had "appropriate eye contact, normal posture and motor

behavior, and her attention, concentration, and memory were no more than mildly impaired." *Id*. (citing AR at 672). As such, the examiner assessed Plaintiff to have "no more than moderate limitations" in mental functioning. *Id*. (citing AR at 673). Accordingly, the ALJ concluded that this "evidence in and of itself supports medical improvement considering [1] the increase in [Plaintiff's] ability to perform activities of daily living, [2] she no longer presents as markedly depressed as she did at the 2018 consultative examination, and [3] she displays no more than mild attention/concentration and memory difficulties as opposed to the more significant impairment displayed in 2018." *Id*. (citing AR at 391–399, 667–674).

**C.      Steps Three Through Five: Improvement to Plaintiff's RFC, Medical Improvement Exceptions, and Plaintiff's Severe Impairments**

At step three, the ALJ determined that Plaintiff's medical improvement is related to her ability to work because the improvement had "resulted in an increase in [her] residual functional capacity." AR at 19 (noting her mental RFC was less restrictive than the one she had at the time of the CPD). Because step four is inapplicable, the ALJ skipped to step five and concluded that Plaintiff continued to have severe impairments. These impairments included "depressive disorder; post-traumatic stress disorder; mood disorder; cannabis use disorder; obesity; Left ankle tendinitis with Os trigonum syndrome; status-post left ankle surgery." *Id*. at 19–20. Because these impairments "cause[d] more than minimal limitation in the [Plaintiff's] ability to perform basic work activities," the ALJ limited her RFC accordingly. *Id*. at 20.

**D.      Step Six: Plaintiff's RFC**

At step six, the ALJ formulated Plaintiff's RFC:

> Since July 21, 2022, the impairments present at the time of the CPD decreased in medical severity to the point where the claimant has had the residual functional capacity to perform light work except, lifting 20lbs occasionally and 10lbs frequently; carrying 20lbs occasionally and 10lbs frequently; sitting for 6hrs; the claimant can stand and/or walk for 4 hours combined, alternate to sitting for 10 minutes during every hour of standing and/or walking while remaining on task; she

6

can push/pull as much as she can lift/carry; and she can never operate foot controls with the left foot. The claimant can never climb ladders, ropes, or scaffolds, can climb ramps and stairs occasionally, and stoop and crouch occasionally. The claimant is able to perform simple, routine tasks; Is able to interact with Supervisors and Coworkers frequently; and Is [sic] able to interact with the Public occasionally. The claimant is able to tolerate few changes in a routine work setting defined as occasional changes in a routine work setting.

AR at 20; *see* SSR 96-8P. In formulating her RFC, the ALJ evaluated whether Plaintiff's symptoms were consistent with objective medical evidence and Plaintiff's subjective complaints. *See* 20 C.F.R. §§ 416.929, 416.927. First, the ALJ weighed Plaintiff's testimony. During the administrative hearing, Plaintiff testified that she was bipolar but her medication "help[ed] her to focus, not lash out, not go into deep depression, and balance her mood." *Id*. at 21. The ALJ also noted that Plaintiff testified that she could "take[] her 9-year-old daughter to school on the bus, public transportation, and then come[] home and attend[] to her one-year-old child and regular household duties." *Id.* at 21–22. The ALJ further observed she was "cognitively intact, and she was well spoken at the hearing." *Id.* at 22.

Second, the ALJ evaluated Plaintiff's medical record. He discussed (1) Plaintiff's December 2022 examination during which she reported worsening post-partum depression and seeking medication for her worsening bipolar depression; and (2) her March 2023 examination when she "presented for an intake evaluation for depressive symptoms, reported that she always felt irritable, easily upset and had good and bad days but denied any particular change in mood in her post-partum period." *Id.* (citing AR at 982, 927–28). The ALJ, however, contrasted this medical evidence to Plaintiff's December 2023 examination in which (1) Plaintiff "reported being okay" despite facing other stressors and running out of medication months prior; and (2) presented "fully orientated with intact attention/concentration and memory similar to her unremarkable mental status examination in March 2023, as well as in December 2022 which was during a time of increased post-partum symptoms." *Id.* (citing AR at 770, 929, 982).

7

Finally, the ALJ analyzed medical opinion evidence.  The ALJ found that Plaintiff's May 2022 psychological consultative examination and June 2022 state agency medical reviewer opinions were both persuasive.  *Id*. at 23–24 (citing AR at 667–74 (May 2022), 99–108 (June 2022)).  The ALJ noted that both the May 2022 report and June 2022 opinions found that "despite [Plaintiff's] depressive symptoms," she still could partake in daily activities, such as shopping or eating out.  *Id.* (citing AR at 671, 673).  In addition, both exams found Plaintiff "had appropriate eye contact, normal posture and motor behavior, and her attention, concentration, and memory were no more than mildly impaired."  *Id.* (citing AR at 672).

From the ALJ's perspective, the persuasive medical evidence supported a finding of no more than a moderate limitation in mental health functioning given Plaintiff's self-reported level of daily activity.  *Id*. at 23.  Specifically, the ALJ found that although Plaintiff "is medically improved and is generally functional from a mental health perspective," her mental impairments demand that she be limited to "simple, routine tasks to address concentration issues during times of depression; no more than occasional interaction with the public and less than continuous interaction with others to address times of irritability and any PTSD symptoms; and no more than occasional changes in routine work setting to limit workplace complexity and avoid exacerbation of her mood disorder."  *Id*. at 22.  Notably, the ALJ accounted for Plaintiff's subjective complaints by including a moderate limitation "in understand[ing], remember[ing], or apply[ing] information" and a mild limitation in "interacting with supervisors and coworkers."  *Id.*

### E.    Step Seven: Plaintiff's Ability to Perform Other Work

Finally, at step seven, the ALJ determined that given Plaintiff's RFC, age, education, and past work experience, she could perform other jobs in the national economy.  *Id*. at 24–25.  Because Plaintiff had no past relevant work, the ALJ relied on the vocational expert's testimony that a hypothetical of an individual with the same age, education, work experience, and RFC as Plaintiff

could perform three unskilled occupations in the national economy: (1) marker (DOT 209.587 – 034); (2) checker I (DOT 222.687 – 010); and (3) garment sorter (DOT 2 to 2.687 – 014). *Id.* at 25. Accordingly, the ALJ found that Plaintiff was not disabled. *Id.* at 25.

## **LEGAL STANDARD**

This Court has jurisdiction to review final decisions of the Commissioner. 42 U.S.C. § 405(g). The Court must affirm the Commissioner's decision if it is based on substantial evidence in the record as a whole and the correct application of the relevant legal standards. *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004). Substantial evidence is more than a mere scintilla but less than a preponderance of the evidence. *Id.* This standard requires only "relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and gives deference to the ALJ as the factfinder. *Katrina M. v. O'Malley*, 752 F. Supp. 3d 1, 9 (D.D.C. 2024) (citation modified).

Despite the deference a reviewing court must give to the ALJ, the standard of review "calls for careful scrutiny of the entire record" to determine whether the ALJ "has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits." *Simms v. Sullivan*, 877 F.2d 1047, 1050 (D.C. Cir. 1989) (citation modified). The ALJ's decision must include findings and conclusions on all material issues of fact, law, or discretion as well as the ALJ's reasons for those findings and conclusions. 5 U.S.C. § 557(c)(3)(A). The plaintiff carries the burden to show that the ALJ's decision was not based on substantial evidence or that the ALJ applied an incorrect legal standard. *Settles v. Colvin*, 121 F. Supp. 3d 163, 169 (D.D.C. 2015) (citation modified); *Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 64 (D.D.C. 2006).

**DISCUSSION**

Plaintiff argues that reversal is warranted because the ALJ erroneously assessed Plaintiff's RFC and inadequately evaluated her subjective complaints. *See* ECF No. 10 at 6–25. Specifically, Plaintiff sets forth three reasons why the ALJ failed to properly formulate her RFC: (1) the ALJ failed to sufficiently account for Plaintiff's moderate limitations in CPP; (2) the ALJ failed to properly evaluate pertinent evidence; and (3) the ALJ failed to set forth a narrative discussion of how the evidence supported each conclusion. *See id*. at 6–23. Plaintiff's first argument is dispositive.

### I.     The ALJ Did Not Properly Assess Plaintiff's CPP Limitations in her RFC and in the Hypothetical Questions Posed to the Vocational Expert.

Plaintiff claims that the ALJ failed to properly address her CPP limitations in formulating her RFC. *Id.* at 9; ECF No. 16 at 3–4. Specifically, Plaintiff argues the ALJ failed to account for her limitations because he never addressed her ability to sustain attention and concentration for a significant amount of time. ECF No. 10 at 14. The Commissioner argues that remand is not warranted because the ALJ accounted for Plaintiff's CPP limitations by restricting her to only perform "simple, routine tasks." ECF No. 13 at 18.

Neither party disputes that, during step one of his analysis, the ALJ concluded that Plaintiff has a moderate CPP limitation. AR at 17 ("With regard to concentrating, persisting, or maintaining pace, the claimant has moderate limitation."). "Moderate limitations in CPP affect a plaintiff's ability to sustain focused attention and concentration long enough to complete tasks in common work settings on a timely basis." *Antonio W. v. Kijakazi*, No. 20-cv-1920, 2023 WL 3790700, at *9 (D.D.C. June 2, 2023) (citing *Johnson v. Saul*, No. 19-cv-3829, 2021 WL 411202, at *6 (D.D.C. Feb. 5, 2021)). As one judge in this District has noted, "many ALJs attempt to account in the RFC for a 'moderate' CPP limitation by restricting the claimant to simple, routine, and/or repetitive

10

work (or some derivation of those limitations)." *Shea M. v. Kijakazi*, No. 21-cv-2204, 2023 WL 3040602, at *18 (D.D.C. Apr. 21, 2023). A limitation to simple, routine, and repetitive tasks, however, is "insufficient to address a moderate CPP limitation because 'the ability to perform simple tasks differs from the ability to stay on task.'" *Id*. at *19 (quoting *Petty v. Colvin*, 204 F. Supp. 3d 196, 206 (D.D.C. 2016)). Because of this, such a limitation, without more, does not actually address the claimant's mental impairment. *Id*. at *18. Accordingly, many courts in this District have held that an ALJ does not properly account for a claimant's CPP limitations by only applying this restriction. *See Petty*, 204 F. Supp. 3d at 206 n.3 (collecting circuit cases); *Louis L. v. Bisignano*, No. 22-cv-2485, 2026 WL 1453729, at *7–9 (D.D.C. May 22, 2026), *report and recommendation adopted*, No. 22-cv-2485, ECF No. 19 (D.D.C. July 10, 2026); *William R. v. King,* No. 23-cv-319, 2025 WL 399974, at *3 (D.D.C. Feb. 5, 2025); *Lisa H. v. Kijakazi*, No. 20-cv-03322, 2023 WL 7156518, at *8–9 (D.D.C. Oct. 31, 2023); *Bullock v. Kijakazi*, No. 20-cv-1764, 2023 WL 5023380, at *8 (D.D.C. Aug. 8, 2023); *Antonio W.*, 2023 WL 3790700, at *9; *Shea M.*, 2023 WL 3040602, at *19; *Johnson*, 2021 WL 411202, at *5–6; *Nsiah v. Saul*, No. 19-cv-42, 2021 WL 372784, at *1 (D.D.C. Feb. 3, 2021).

In addition to properly accounting for a CPP limitation, when posing hypothetical questions to a vocational expert, the ALJ must accurately describe the claimant's impairments so that the expert can assess whether jobs in the national economy exist for the claimant. *See Butler*, 353 F.3d at 1005; *Petty*, 204 F. Supp. 3d at 205. An ALJ's failure to accurately describe a claimant's impairments can be reversible error. *Petty*, 204 F. Supp. 3d at 205 (citing *Butler*, 353 F.3d at 1006).

Here, although the ALJ concluded that Plaintiff had moderate limitations in CPP, the ALJ failed to adequately factor those limitations into the RFC or the hypothetical questions posed to

11

the vocational expert.  Although the Commissioner argues that the other "mental RFC provisions did account for all of [Plaintiff's] limitations," he cites no authority in support of this conclusory assertion.  ECF No. 13 at 18.  Even if the Commissioner could point to some authority, limiting changes in the workplace, for example, does not affect whether Plaintiff can *sustain* focus on these tasks for long periods of time.  *See Antonio W.*, 2023 WL 3790700, at *9 (reaching the same conclusion).  As such, the ALJ's mere reference to an RFC limiting Plaintiff to "simple, routine tasks" does not properly account for her CPP limitations.

Moreover, the ALJ also failed to factor Plaintiff's limitation into the hypotheticals posed to the vocational expert.  AR at 58–59; *see Simmons v. Saul*, No. 18-cv-1293, 2019 WL 12251882, at *18 (D.D.C. Sept. 30, 2019) (noting the significance of a claimant being off task), *report and recommendation adopted*, No. 18-cv-1293, 2019 WL 12251883 (D.D.C. Oct. 22, 2019).  For example, the ALJ never posed a hypothetical asking whether a claimant with Plaintiff's limitations could be off task for any amount of time.  This is significant because the ALJ knew that Plaintiff previously could not maintain CPP for "even two hours at a time" which previously "precluded her from completing a normal 8 hour work day and 5 day work week on a regular and continuing basis."  AR at 15.  Moreover, in concluding that Plaintiff had a moderate CPP limitation, the ALJ relied on a March 2023 examination in which Plaintiff reported that "throughout her life she has had disorganized thoughts, would start tasks but not complete them, and felt easily distracted."  AR at 17 (citing AR at 927–28).  By relying on this evidence, but not asking the vocational expert whether Plaintiff could *ever* be off task, the ALJ failed to build an "accurate and logical bridge from the evidence to [his] conclusion."  *Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 64, 67 (D.D.C. 2006).  Therefore, the ALJ erred by failing to include specific limitations adequate to

account for Plaintiff's mental impairments in the RFC and hypothetical questions to the vocational expert.

The discussion, however, does not end there.  It is not the case that this error warrants remand in all cases.  *Shea M.*, 2023 WL 3040602, at *18.  Rather, an ALJ may be found to have adequately accounted for the claimant's moderate CPP limitation either: "(1) by including additional limitations in the RFC relevant to the CPP domain beyond an unadorned simple, routine, and repetitive tasks (or its equivalent) restriction, or (2) by adequately explaining why . . . [the claimant's] overall limitations do not affect his capacity to sustain simple, routine, or unskilled work."  *Id*. (citation modified).  In other words, although the ALJ failed to include additional limitations in the RFC beyond the general restriction, the decision could still be affirmed if the ALJ separately explains the basis for concluding that the RFC did not require additional concentration-based limitations.  *William R.,* 2025 WL 399974, at *3 (quoting *Shea M.*, 2023 WL 3040602, at *20).

The Commissioner does not address this standard and instead contends[4] that remand is not warranted because the medical evidence demonstrates that Plaintiff can engage in simple, routine tasks or unskilled work despite her limitations.  ECF No. 13 at 19.  From the Commissioner's perspective, the opinions of Drs. Heisner and Trogner "that [Plaintiff] has only moderate limitations in maintaining attention and concentration for extended periods" and that she has "only mildly impaired attention, concentration, and memory" were sufficient to prove Plaintiff could engage in simple, routine tasks or unskilled work.  ECF No. 13 at 20 (citing AR at 672–73, 1753,

---

[4]    The Commissioner also appears to argue that remand is not warranted because the ALJ "implicitly accounted for a claimant's limitations in concentration, persistence, and pace" by limiting her to simple routine tasks.  ECF No. 19 at 19–20 (citing *Petty*, 204 F. Supp. 3d at 206 (citation modified)).  As the Court already explained, this restriction is not sufficient to account for Plaintiff's CPP limitations.

1770, 1773, 1891, 1895) (also noting the opinions found Plaintiff "was in no acute distress, pleasant, alert, and oriented to person, place, and time; and had an appropriate mood and affect"). Even assuming this was enough evidence to demonstrate Plaintiff could engage in simple, routine tasks or unskilled work,[5] the ALJ still had to explain the basis for concluding that Plaintiff's RFC did not require additional limitations to account for her ability (or lack thereof) to *sustain* her concentration. *William R.,* 2025 WL 399974, at *3. And, for the reasons already stated, the ALJ failed to do so.

As the ALJ's decision stands, the Court cannot discern an adequate explanation as to how the RFC was specifically tailored to Plaintiff's limitations with respect to CPP. Accordingly, Plaintiff is entitled to a new administrative hearing. Because the Court remands on this basis, the Court need not address Plaintiff's remaining arguments. *See Saunders*, 6 F.4th at 5. The ALJ is free to (and should if they deem it necessary) consider Plaintiff's other arguments in the context of a new hearing on remand. *See Peyton v. Saul*, No. 17-cv-1803, 2020 WL 9439365, at *4 n.5 (D.D.C. Mar. 2, 2020).

---

[5] Medical evidence must affirmatively prove that the claimant is capable of completing simple, routine, repetitive tasks. *Petty v. Colvin*, 204 F. Supp. 3d at 207–08; *see Mirlin T. v. Kijakazi*, No. 20-cv-960, 2021 WL 9217635, at *10–11 (D.D.C. Aug. 24, 2021). The cases the Commissioner cites in support of his position all identified substantial medical and other record evidence that proved the claimants could complete simple, routine tasks without additional restrictions. *See, e.g., Pixley v. Kijakazi,* No. 23-cv-3626, 2024 WL 4019626, at *7 (D.D.C. Sept. 3, 2024) (noting the claimant "exhibited *intact* attention and concentration") (emphasis added); *Davis v. Berryhill*, 272 F. Supp. 3d 154, 172 (D.D.C. 2017) ("[T]he ALJ identified substantial medical and other evidence of record—including her completion of cosmetology school and high school and the opinions of Drs. Haim, McMorris, and Nachbar—establishing that Plaintiff is capable of performing simple, routine, and repetitive tasks."). The evidence the Commissioner cites here, at most, supports a finding that Plaintiff had moderate CPP limitations. The Commissioner does not cite specific evidence that she could perform the allocated tasks notwithstanding those limitations.

**<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiff's Motion for Judgment of Reversal (ECF No. 10) is **GRANTED**, and Defendant's Motion for Judgment of Affirmance (ECF No. 13) is **DENIED**. This matter is **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum Opinion.  The Clerk of the Court is respectfully requested to close this case.

**SO ORDERED.**

Date: July 27, 2026

_____
MOXILA A. UPADHYAYA
UNITED STATES MAGISTRATE JUDGE

15